**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| AMANDA WATZKA, BROOKE LA COUNT, and GRACE WILLIAMS, | ) ) |
| | ) Case No. 26-cv-000392 |
| Plaintiffs, | ) |
| | ) The Hon. Judge Byron B. Conway |
| v. | ) |
| | ) Magistrate Judge Joseph |
| THE BOARD OF EDUCATION OF OCONTO FALLS PUBLIC SCHOOL DISTRICT, | ) ) ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF BRIDGET THOMAS**

Pursuant to 28 U.S.C. § 1746, Declarant, Bridget Thomas, hereby declares that the following statements are true and correct based upon personal knowledge and that, if called to testify, I would testify consistently herewith:

1.  I am an adult resident of Wisconsin and am competent to testify to the matters set forth herein based on my personal knowledge.

2.  I was employed as a teacher at Washington Middle School (also known as Oconto Falls Middle School) from approximately 2008 to 2016. During my first five years, I taught 6th grade Character Quest, 7th grade Personal Finance, and 8th grade World Geography. During my final three years, I taught 8th grade World Geography exclusively.

3.  Around the 2012–2013 school year, I first encountered Lucas Cromell, who at that time worked as a Spanish teacher and district-wide ESL instructor at the school.

4.  During approximately the 2012–2013 school year, Mr. Cromell made repeated sexually harassing comments to me on approximately ten occasions. Specifically, he asked me questions such as how to perform sexual acts and requested that I provide him with demonstrations of those acts,

including asking questions about oral sex and French kissing. I rebuffed his advances each time by walking away or dismissing his comments.

5. Shortly after that period, Mr. Cromell was promoted to Dean of Students, making him my direct supervisor. Once he assumed that role, his behavior toward me changed. When I sent students to his office for disciplinary issues, he would send them back to my classroom with candy rather than addressing their behavior, effectively undermining my authority. He dismissed my concerns and implied that classroom disruptions were my fault rather than taking appropriate disciplinary action.

6. I believed that Mr. Cromell's failure to support me as a teacher was in retaliation for my refusal to engage with his prior sexual harassment.

7. I reported Mr. Cromell's conduct to my principal, Lou Hobyan. I attended that meeting with my union representative, Christine Sherman. I informed Mr. Hobyan of Mr. Cromell's prior requests for sexual demonstrations, explained that Mr. Cromell was failing to support me as a teacher, and requested that Mr. Hobyan back me up. After Ms. Sherman stepped out at Mr. Hobyan's request, Mr. Hobyan told me: "Bridget, I gotta back my Dean of Students. If you want, I'll write you a letter of recommendation, and you can go somewhere else." No remedial action was taken.

8. During the 2014–2015 school year, at least four other teachers — including Tania Wusterbarth (now Tania Jersey) and Kelly Sheridan (I am uncertain of the exact spellings of their names) — presented evidence of Mr. Cromell's harassment to the school board, including emails and text messages of an inappropriate sexual nature that Mr. Cromell had sent. The school board took no disciplinary action. Instead, Mr. Cromell was promoted to Assistant Principal the following year.

9.  Because of the school board's inaction, those teachers left the school. By the 2015–2016 school year — my final year of employment — I was the only teacher remaining who had experienced and reported Mr. Cromell's harassment.

10. Prior to the 2015–2016 school year, I met with Superintendent Dean Hess and informed him of the ongoing harassment, including the history of complaints and the fact that no discipline had been issued. Superintendent Hess asked whether I wished to file a formal complaint. I declined, stating that I feared doing so would place an even greater target on my back, but I made clear that I needed to be taken seriously if new issues arose.

11. During the 2015–2016 school year, I had a student, C.K., in my classroom. C.K. displayed a defiant attitude, telling me at one point — while holding a sucker she had received from Mr. Cromell's office — that she did not have to listen to me and could do whatever she wanted in my classroom. Whenever I sent C.K. to the office for disciplinary issues, Mr. Cromell took no meaningful action.

12. I observed Mr. Cromell interacting with C.K. in the hallways in a manner that made me uncomfortable and raised my concern that something was wrong.

13. Toward the end of the 2015–2016 school year, C.K.'s friend, F.T., approached me at the end of the school day and told me she was very uncomfortable about something she needed to share. F.T. informed me that C.K. had shown her C.K.'s phone, and that it contained explicit sexting text messages between Mr. Cromell and C.K. F.T. stated that she had read the messages and found them disgusting.

14. I thanked F.T. for coming forward and promised to do everything I could. I immediately consulted with Christine Sherman, my union representative, about how to proceed given that prior reports had been dismissed. Together, we arranged an urgent meeting with Superintendent Hess.

3

15. The following day, I met with Superintendent Hess, Christine Sherman, and approximately two other individuals whose identities I do not know, in a small room at Washington Middle School. I reported what F.T. had told me — that there were inappropriate sexting messages between Mr. Cromell and C.K. — and stated that it needed to be investigated. Superintendent Hess told me that she had looked at Mr. Cromell's phone and found nothing, and accused me of "spreading drama," telling me to "get myself in line."

16. Shortly after that meeting, I was informed that I would not be renewed for the following school year. The school cited budgetary reasons. I did not believe this was the true reason, as I taught multiple required courses — World Geography, Social Studies, and History — for grades 6 through 8 and had received positive performance evaluations.

17. Further Declarant sayeth not.

I declare under penalty of perjury under the laws of the State of Wisconsin that the foregoing is true and correct to the best of my knowledge.

03/15/2026

Executed on this _____

Signed by: Bridget Thomas

I approve this document
3/15/2026 7:58 PM UTC

_____

Bridget Thomas