**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| AMANDA WATZKA, BROOKE LA COUNT, GRACE WILLIAMS, BRIANNA KAIN, and KAYLA KASPER, | ) ) ) ) |
| Plaintiffs, | ) Case No. 26-cv-00392 ) ) The Hon. Judge Byron B. Conway |
| v. | ) ) Magistrate Judge Joseph |
| THE BOARD OF EDUCATION OF OCONTO FALLS PUBLIC SCHOOL DISTRICT, | ) ) ) ) |
| Defendant. | ) ) |

**DECLARATION OF BRIE CARRIVEAU**

Pursuant to 28 U.S.C. § 1746, I, Brie Carriveau, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

**I. BACKGROUND**

1. I am an adult resident of Oconto Falls, Wisconsin, where I have lived since 2020. I am the parent of a daughter who was enrolled at Oconto Falls Middle School during the 2022–2023 school year, then in seventh grade. I have personal knowledge of all facts stated herein, except where stated on information and belief.

2. I am the administrator of the Facebook group "Parents of Oconto Falls Schools," a community group for parents of students in the Oconto Falls School District.

3. The following facts concern the conduct of a middle school gym teacher employed by the Oconto Falls School District (referred to herein as "the Teacher"), the reports made by students and parents about that conduct, and the District's response thereto.

Signed by Brie Carriveau

The signed document can be validated at https://app.vinesign.com/verify

## II. REPORTS FROM STUDENTS

4. Beginning in the 2022–2023 school year, my daughter began telling me that she and other girls in her gym class felt deeply uncomfortable with the Teacher's behavior. At the time, I dismissed my daughter's concerns, believing she was being dramatic. I now recognize that was a mistake, and I deeply regret it.

5. Over time, as more students came to my home—which was located approximately two blocks from the middle school and was a frequent gathering place for my daughter and her peers—I learned of a pattern of concerning conduct from multiple students. The accounts included the following:

a. **Locker room intrusions.** Multiple students reported that the Teacher had walked into the girls' locker room on more than one occasion without permission or announcement.

b. **Physical contact during stretches.** Students reported that when they struggled with stretches in gym class, the Teacher would physically assist them by placing his hands on their legs and thighs. Students described these stretches as uncomfortable and painful. By contrast, when male students struggled with the same exercises, they were told to figure it out themselves.

c. **Inappropriate staring.** My daughter personally witnessed the Teacher staring at a female student for an extended and inappropriate period of time while that student was jumping rope. The staring was prolonged enough that my daughter was able to stop participating in the exercise entirely without the Teacher noticing.

d. **Dress requirements targeting girls.** Students reported that the Teacher told them to wear shorts to gym class. This requirement was not uniformly applied to male students.

e. **Threatening entry into the locker room.** A student reported that while she was in the girls' locker room changing, the Teacher began counting down from five, threatening to enter if she did

Signed by Brie Carriveau
I approve this document
3/21/2026 5:59 PM UTC

Signed by Brie Carriveau
I approve this document
3/21/2026 5:59 PM UTC

not come out immediately. By the time he reached the count of one, he was already stepping into the locker room doorway as the student was walking out.

f. **Caressing a student's thighs.** A student reported that the Teacher caressed up and down her thighs when she failed to complete stretches to his satisfaction.

6. These accounts came to me through direct conversations with students in my home, and through Snapchat messages that students sent to each other. In or around January–February 2023, my daughter and another student encouraged their peers to come forward with their experiences. Students who responded expressed fear of retaliation, with some specifically asking not to be identified for fear the Teacher would find out. My daughter collected these Snapchat screenshots and submitted them to school administration during the District's investigation. One example of these messages is as follows:

> Bro he fr walked in on us girls changing and then he threatened to go into the girls locker room when ███████ what changing to go to the office and he always looks at me weirdly when we do stuff like he always looks at the back of me and I don't feel comfortable at all in his class

7. The reports were not limited to students currently enrolled. One parent stated publicly that her daughter, then a sophomore at the high school, said that the conduct had been "an issue" when she was at the middle school. Another adult who had long since graduated confirmed that the

3

Case 1:26-cv-00392-BBC    Filed 03/30/26    Page 3 of 22    Document 16

Signed by Brie Carriveau
I approve this document
3/21/2026 5:59 PM UTC

Teacher had behaved similarly toward her during her time as a student. The pattern of behavior appears to span multiple years.

### III. CONCERNS RAISED BY PARENTS

8. Prior to any public disclosure, I personally reported my daughter's concerns to the school administration by telephone. I was told, in substance, that my daughter was "dramatic" and the matter was dismissed.

9. Another parent who had a daughter in my daughter's class—and whose daughter's account is described in paragraph 5(g) above—similarly reported her concerns to school administration prior to the Facebook post. That parent and her husband possess emails with Superintendent Dr. Dean R. Hess in which Dr. Hess responded in substance indicating that the reported conduct was not a serious matter.

10. Yet another parent confirmed that she had spoken to the Vice Principal, Mr. Dunks, about her daughter's concerns prior to the public post. She reported that nothing was done.

11. After these individual reports to administration yielded no response, I posted on the "Parents of Oconto Falls Schools" Facebook page on January 29, 2023. The post did not name the Teacher or identify his position. It stated that concerns had been raised by girls at the middle school who felt very uncomfortable in gym class, that I had personally reported my daughter's concerns to administration and been ignored, and that I wished to open a discussion with other parents about whether similar concerns existed.

12. The post generated over one hundred comments and immediate responses from additional parents. At least one parent confirmed her daughter—now in high school—had experienced the same issues. Another parent stated that the problem had been "unresolved for a while" and that "year after year apparently" nothing had been done despite reports to the school board. Multiple

Signed by Brie Carriveau

I approve this document.
3/21/2026 5:59 PM UTC

parents expressed that social media was the only way to find one another given that individual reports to the school had been ignored.

13. During the public discussion, one teacher commented on the post multiple times, urging me to remove the discussion from social media and suggesting I could be held liable for slander. She was, at the time, employed as a science teacher at Oconto Falls Middle School and was the current science teacher for both my daughter and the daughter of another parent who had reported concerns. She was therefore personally aware that the subject of these reports was a staff member whose conduct directly affected her own students.

14. Jamie Kuhn, who I understand to be a school resource officer, also commented on the public thread. Officer Kuhn cited Wisconsin statutes on harassment and defamation and stated in substance that my post did not meet those definitions, but did not express concern for the students whose reports had prompted the discussion.

## IV. THE OCONTO FALLS SCHOOL DISTRICT'S DELIBERATE INDIFFERENCE

15. On February 2, 2023, after the Facebook post generated significant community attention, the Oconto Falls School District issued a public statement under the signature of Superintendent Dr. Dean R. Hess. That statement acknowledged that "statements were posted on social media asserting that a district staff member had engaged in inappropriate conduct," and stated that "[u]pon learning of the social media content, school and district administration immediately initiated a review."

16. The February 2 statement further stated that "[i]t is not the case that allegations of the nature of those posted on social media have been previously raised and ignored." This statement was false. As described above, I had personally reported my daughter's concerns by phone prior to the Facebook post, was told my daughter was dramatic, and received no follow-up. The parents of another affected student possessed emails from Dr. Hess himself indicating the reported conduct

5

Signed by Brie Carriveau
Signed by Brie Carriveau
approve this document approve this document
3/21/2026 ... PM UTC 3/21/2026 5:59 PM UTC

was not a significant concern. Yet another parent had raised concerns directly with the Vice Principal and received no action. The District's own investigation was therefore not triggered by the students' reports—it was triggered solely by my Facebook post generating public scrutiny.

17. On February 17, 2023, the District issued a second official public statement concluding the investigation. The statement declared that "there is no evidence supporting any allegation of any inappropriate conduct, nor is there any evidence to support the assertion that the school administration failed to address prior reports of such concerns." The investigation was conducted internally and exclusively by school or district administration.

18. The February 17 statement went further: it characterized the investigation as having been "initiated by a social media posting of conclusory statements regarding a staff member's inappropriate conduct," stated that "public accusations such as those made in this situation, pose significant threat to the staff member's professional and personal well-being," and instructed parents to "[r]espectfully consider the potential impact on a person wrongly accused of such conduct before making allegations on a social media platform or another public forum." A true and accurate copy of the announcement from the school board is as follows:

6

Signed by Brie Carriveau
I approve this document
3/21/2026 5:59 PM UTC

# OCONTO FALLS PUBLIC SCHOOL DISTRICT

**OCONTO FALLS**
SCHOOL DISTRICT

*Commitment to Excellence*

Dr. Dean R. Hess, Superintendent
200 North Farm Road
Oconto Falls, WI 54154
Phone: 920-848-4471
Fax: 920-848-4474
dean.hess@of-ps.org

**Oconto Falls School District**
**For Immediate Release**
**17 February 2023**

The following is provided as an update concerning the Oconto Falls School District's investigation concerning the contents of a series of social media posts from the last weekend of January. These posts accused a member of the school district staff of inappropriate conduct involving students. After a thorough investigation by district administration and consultation with the Board of Education, the conclusion of the investigation is that there is no evidence supporting any allegation of any inappropriate conduct, nor is there any evidence to support the assertion that the school administration failed to address prior reports of such concerns. No students have been at any time relative to this situation at any risk and there is no reason to believe any present threat exists to the safety of any students.

This investigation was initiated by a social media posting of conclusory statements regarding a staff member's inappropriate conduct. The District values all school staff and wish to remind all that public accusations such as those made in this situation, pose significant threat to the staff member's professional and personal well-being, as well as that of their family members, and creates unnecessary and unjustified concern on the part of all students and parents. The District greatly values and appreciates the community's interest and encourages students or parents with information of potential concerns to please contact a member of the school administration so that the concerns may be investigated. Respectfully consider the potential impact on a person wrongly accused of such conduct before making allegations on a social media platform or another public forum. The District's administrative officials will immediately investigate any concerns brought forward regarding student safety in particular, just as was the case in this instance.

19. The District issued this statement publicly—including by email to all parents in the District and by posting on the District's social media pages. The student population, including the students who had come forward with reports, was aware of and read this statement.

20. The effect on the students was immediate and severe. The girls[1] who had come forward reported feeling that they were being called liars and that they had wrongly harmed a teacher's career. They expressed to me that they would never report concerns to the school again.

21. The consequence of the District's response was direct and concrete. My daughter had stepped forward, submitted evidence to the principal, and trusted the institution to protect her. The District responded by publicly discrediting the students, exonerating the Teacher without apparent

---

[1] Copies of snapchat and other messages from the children have been produced to Plaintiff's counsel in this case.

7

Signed by Brie Carriveau
approve this document
3/21/2026 5:59 PM UTC

independent investigation, and warning the community against making further reports. When my daughter was subsequently subjected to inappropriate conduct by another teacher—who also happened to be our next-door neighbor—she did not report it to anyone. I believe, and she has confirmed, that the experience of reporting concerns about the Teacher and being made to feel like a liar directly caused her silence in the later incident.

22. The investigation's conclusions are further undermined by the following: when my daughter presented the principal, with Snapchat screenshots from multiple students during the investigation, reviewed the screenshots on my daughter's phone, said "thank you for bringing these to my attention," and sent my daughter back to class. The principal did not request copies of the screenshots or take any further action in my daughter's presence.

## V. GAYLE GANDER — PERSONAL KNOWLEDGE AND CAUSAL CONNECTION TO MY DAUGHTER'S SILENCE

23. My son had Gayle Gander for English class. He was not involved in the drama program, and nothing concerning came to my attention from my son's experience with Gander.

24. My daughter, however, was in the drama program. She had Gayle Gander as her teacher and director throughout her involvement in theater at Oconto Falls High School. As a drama student, she participated in trips and events associated with the program—activities that took students, including my daughter, to hotels overnight with Gander as the supervising adult. I did not, at the time, have any specific concern about this.

25. I have learned that Gayle Gander was arrested on or about December 15, 2025, on criminal charges for allegations of sexual misconduct during his employment with the Oconto Falls School District. Following Gander's arrest, Superintendent Stuart Russ sent an official communication to all staff and families of the Oconto Falls Public School District stating, in relevant part: "A staff member of Oconto Falls High School has been arrested on allegations of misconduct during his employment with the District. We are deeply disappointed by the nature of

8

Signed by Brie Carriveau
I approve this document
3/21/2026 5:59 PM UTC

the allegations. The District has been and will continue to coordinate fully with law enforcement. As soon as the allegations were communicated to school officials, the staff member was immediately removed from school and relieved of his responsibilities."

26. I believe there is a direct and traceable connection between the District's handling of the gym teacher complaints in 2023—described in Sections II through IV of this declaration—and my daughter's failure to disclose anything about Gander's conduct toward her.

27. Specifically, as described above, my daughter came forward in 2023 with concerns about the gym teacher, submitted evidence to the principal, and participated in the District's investigation. The District responded by publicly declaring the investigation closed with no findings, characterizing the social media discussion of the issue as a threat to the teacher's wellbeing, and warning the community against making reports. My daughter and her peers were left feeling that they had falsely accused an innocent man and had harmed his career. They felt, in effect, like liars.

28. The photograph that triggered Gayle Gander's arrest was taken by my daughter. My daughter had photographed Gander in the act of engaging in massaging a male student during a drama event. That photograph was posted on the drama team's Instagram page. A teacher saw the photograph on that Instagram page and contacted law enforcement. It is my understanding that this photograph was the direct cause of Gander's arrest.

9

Signed by Brie Carriveau
I approve this document
3/21/2026 5:59 PM UTC



28. The day following Gander's arrest, I brought my daughter to the school and met with Officer Jaime Kuhn and the principal together in the same room. I went there specifically to inform them that my daughter was the one who had taken the photograph. I told them directly: my daughter took that photo, she has it on her phone, and we brought her phone with us to that meeting. We offered to give them the phone.

29. Officer Kuhn and the principal did not ask for my daughter's phone. They did not ask to see the photograph. They did not ask to see any photos before or after it. They accepted no evidence from us. We assumed that they would follow up and request the phone at a later point. They never did.

Signed by Brie Carriveau

I approve this document.
3/21/2026 5:39 PM UTC

30. During that same meeting — before the investigation had concluded, and in fact before it had meaningfully begun — my daughter disclosed to Officer Kuhn that she herself had been subjected to unwanted physical contact by Gander. My daughter told Officer Kuhn that Gander had repeatedly come up to her and other drama students, placed his hands on her shoulders, and massaged and squeezed them. This happened to her multiple times over the course of her involvement in the drama program. Notably, the shoulder massaging is conduct that Gander himself has since publicly admitted to.

31. Officer Kuhn was therefore explicitly informed, at the very outset of the investigation, of three separate facts: first, that my daughter was the source and custodian of the photograph that had caused Gander's arrest; second, that my daughter had witnessed Gander engaging in inappropriate physical contact with other students, including the boy depicted in the photograph; and third, that Gander had subjected my daughter herself to repeated unwanted touching. Officer Kuhn acknowledged this information and closed the meeting by telling us she would let us know what happened next week.

32. The investigation concluded without my daughter being designated as a victim. She was listed only as a witness — and only in connection with what she observed happening to others. At no point during or after the investigation did Officer Kuhn or any school or law enforcement official contact us to follow up on my daughter's own disclosure. The only contact I initiated after that meeting was a call to Officer Kuhn asking why Gander had been permitted to return home.

I declare under penalty of perjury under the laws of the State of Wisconsin that the foregoing is true and correct.

Executed this _____ day of _____, 2026, at Oconto Falls, Wisconsin.

03/21/2026

Signed by Brie Carriveau

I approve this document

BRIE CARRIVEAU    3/21/2026 5:59 PM UTC

11

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

AMANDA WATZKA, BROOKE LA COUNT,  )
GRACE WILLIAMS, and BRIANNA KAIN,  )
                                   )  Case No. 26-cv-00392
        Plaintiffs,                )
                                   )  The Hon. Judge Byron B. Conway
v.                                 )
                                   )  Magistrate Judge Joseph
THE BOARD OF EDUCATION OF          )
OCONTO FALLS PUBLIC SCHOOL         )
DISTRICT,                          )
                                   )
        Defendant.                 )

**DECLARATION OF JEN McLEOD**

Pursuant to 28 U.S.C. § 1746, Declarant, Jen McLeod, hereby declares that the following statements are true and correct based upon personal knowledge and that, if called to testify, I would testify consistently herewith:

1. I am an adult resident of Colorado and am competent to testify to the matters set forth herein based on my personal knowledge. I attended Oconto Falls High School, part of the Oconto Falls Public School District.

2. During my freshman year at Oconto Falls High School, I was approximately fourteen years old. My history teacher that year was a man I will refer to as Kurt Lietz. On one occasion, Lietz asked me to stay after class, observed that I appeared upset, and closed the classroom door so that we were alone. He then told me that he and junior and senior boys had compiled a list of the top five hottest girls in the school, and that I was on that list. I was fourteen years old when he closed the door and told me this, while we were alone together.

3. Throughout my time at Oconto Falls High School, Lietz continued to make inappropriate comments to me about my appearance. These comments were made in a flirtatious manner. On at least one occasion, he made a comment directed at my body, specifically regarding my buttocks. This conduct was directed at me personally on a recurring basis across my high school years.

4. During my sophomore and junior years, I had another history teacher whom I will refer to as Christian Dory. Dory permitted me to leave class and provided me with other privileges in exchange for flirtatious behavior. Specifically, he would tell me I could go to another classroom if I retrieved keys from his front pocket.

5. Lietz and Dory were close friends and colleagues. On one occasion, when I was approximately fifteen years old and attending a fellow students graduation party, both Lietz and Dory attended and brought alcohol. It was known among students that the two of them would come to high school parties and socialize with students. At the time, both men were in their thirties. I understand that

The signed document can be validated at https://app.vinesign.com/Verify

Dory may have been married at the time, and that Lietz was likely single. Both Lietz and Dory regularly attended high school parties during this period.

6. During approximately my sophomore year — which would have been around 2011 — I learned that Lietz had been engaged in an inappropriate sexual relationship with a fellow student, ██.██., who was a senior at the time. I was told — and it was my understanding — that during her senior year, Lietz had sexual intercourse with ██. for the first time. ██. showed me text messages she had exchanged with Lietz. I also recall, on one occasion, being outside Lietz' house with ██. and two other students. I also recall being at a fair in Oconto during which ██. was texting Lietz. I know that ██ and another student had previously visited Lietz at his home.

7. The conduct described above — involving both Lietz and Dory — was so pervasive and normalized within the school environment that it felt ordinary at the time. It was only in retrospect that I understood the nature of what was happening and how inappropriate it was.

8. Further Declarant sayeth not.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this _____, 2026.

Signed by Jen McLeod  03/17/2026

I approve this document
3/17/2026 9:42 PM UTC

Jen McLeod

2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

AMANDA WATZKA, BROOKE LA COUNT, )
GRACE WILLIAMS, BRIANNA KAIN, and )
KAYLA KASPER, )
                                   ) Case No. 26-cv-00392
        Plaintiffs, )
                                    ) The Hon. Judge Byron B. Conway
v. )
                                     ) Magistrate Judge Joseph
THE BOARD OF EDUCATION OF )
OCONTO FALLS PUBLIC SCHOOL )
DISTRICT, )
                                     )
        Defendant. )

**DECLARATION OF JENNIFER ALLEN**

Pursuant to 28 U.S.C. § 1746, Declarant Jennifer Allen hereby declares that the following statements are true and correct based upon personal knowledge and that, if called to testify, I would testify consistently herewith:

1. I am an adult resident of Wisconsin and am competent to testify to the matters set forth herein based on personal knowledge.

2. I graduated from Oconto Falls High School in 1992, having attended the school from approximately 1988 through 1992. During my time at Oconto Falls, I was an athlete participating in three sports, including varsity basketball.

3. During my sophomore year of high school — when I was approximately 16 years old — a new girls' varsity basketball coach began working at Oconto Falls High School. He is identified herein as Staff Member G. At the time, Staff Member G was in his mid-to-late twenties and was pursuing a teaching degree. He was not yet a licensed teacher during the period he coached. His wife was employed as a school counselor at Oconto Falls High School.

4. Beginning during my sophomore year and continuing through my first year of college, Staff Member G and I were engaged in a romantic and sexual relationship. I was between the ages of 16 and 19 during this relationship. Staff Member G was 12 years older than I was. The relationship was ongoing and regular — occurring approximately weekly or as often as opportunity permitted — over a period of several years. Sexual activity occurred at school, including in locker rooms, and at Staff Member G's private residence.

5. During this time, Staff Member G was my active varsity basketball coach and I was a student and athlete at Oconto Falls High School. He occupied a position of authority and trust over me as my coach. I understand now, with the benefit of age and perspective, that regardless of my perception of the relationship at the time, this conduct was illegal.

The signed document can be validated at https://app.vinesign.com/Verify

6. Staff Member G was married to his wife, a school counselor at Oconto Falls High School, throughout the period of this relationship. His wife was aware that rumors about our relationship existed within the school community. On at least one occasion, she made a joking comment to me in the school hallway — near her office — acknowledging the rumors and making light of them in a manner that indicated she was aware of, and did not meaningfully address, what was occurring.

7. This relationship was not a secret within the school or wider community. People talked about it. I was aware that others, including adults, knew or suspected that something was going on between Staff Member G and me. Despite this, no school official, teacher, counselor, coach, or administrator ever intervened, made a report, or took any action to stop it.

8. After Staff Member G's time as a basketball coach concluded, he was hired as a teacher at an elementary school within the Oconto Falls School District, where he taught until his retirement, which I believe occurred in or around 2020.

9. I did not report this relationship to any authority during high school or at any point thereafter until now. I confided in one friend near the end of our time in high school, and my husband is aware of what occurred, but beyond those disclosures, I kept silent. My silence was not a reflection of my belief that the conduct was acceptable — it was a product of shame, fear of embarrassment to my family, and the reality that, as a teenager, I did not fully understand that the responsibility for what occurred rested with Staff Member G, who was an adult in a position of authority over me.

10. This relationship affected every aspect of my educational experience. I was forced to maintain a false exterior — keeping up grades, participating in activities — while concealing something that caused me profound shame and confusion. It caused me to question my sense of self and to carry a distorted sense of responsibility for what occurred for decades. I have spent over thirty years reflecting on how this experience shaped me and wishing things had been different.

11. I come forward now not for my own benefit, but because I believe the pattern of conduct at Oconto Falls must be documented. Had someone intervened when this was happening — had any adult in that building acted on what they knew or suspected — Staff Member G might have faced accountability, and other young women might have been protected. I hope that by coming forward I can contribute to that accountability now.

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this   03/20/2026   _____, 2026.

Signed by Jennifer Allen

*Jennifer Allen* — I approve this document
3/21/2026 2:00 AM UTC

_____

Jennifer Allen

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| AMANDA WATZKA, BROOKE LA COUNT, GRACE WILLIAMS, and BRIANNA KAIN, | ) )  ) Case No. 26-cv-00392 |
| Plaintiffs, | ) ) |
| v. | ) The Hon. Judge Byron B. Conway ) |
| | ) Magistrate Judge Joseph |
| THE BOARD OF EDUCATION OF OCONTO FALLS PUBLIC SCHOOL DISTRICT, | ) ) ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF NICOLE COOPMAN**

Pursuant to 28 U.S.C. § 1746, Declarant, Nicole Coopman, hereby declares that the following statements are true and correct based upon personal knowledge and that, if called to testify, I would testify consistently herewith:

1. I am an adult resident of Wisconsin and am competent to testify to the matters set forth herein based on my personal knowledge.

2. I attended the Oconto Falls School District from kindergarten through twelfth grade, graduating from Oconto Falls High School in 1993. My high school years spanned from approximately 1989 to 1993.

3. During my freshman and sophomore years at Oconto Falls High School, I became acquainted with Early Fuller, who served as a basketball coach at the school. Mr. Fuller was not a classroom teacher; he served solely as a basketball coach. During this period, Mr. Fuller began seeking me out on team buses, inviting me to sit with him, and engaging me in personal conversations that progressed from basketball to personal topics including my family and life outside of school.

4. During the fall of my sophomore year, Mr. Fuller became the JV basketball coach, which

The signed document can be validated at https://app.vinesign.com/Verify

is the team I played on. Beginning at that time, Mr. Fuller began driving me home from basketball practices and games. On multiple occasions during these drives, he would stop at a dead-end road and sexually assault me.

5. During the spring and summer following my sophomore year, I served as a team manager for an All-Stars travel basketball team that Mr. Fuller also coached. That team traveled extensively, including to practice in Green Bay, Wisconsin. During these trips, I was assigned to share accommodations with other team members; however, Mr. Fuller — who had his own private hotel room — would ask me to come to his room, where he would engage in sexual intercourse with me.

6. In total, Mr. Fuller forced me to engage in penetrative sexual intercourse on approximately fifteen separate occasions. In addition to these instances, Mr. Fuller regularly engaged in unwanted physical contact with me, including touching and grabbing me in a sexual manner.

7. I was fifteen years old the first time Mr. Fuller forced me to have sexual intercourse with me, and sixteen years old at the time of the last such incident. The abuse was the first sexual experience of my life. Mr. Fuller never explicitly threatened me, but he consistently told me that what was happening "had to be our secret," which I understood as a directive to remain silent.

8. I did not disclose the abuse to my parents, school administrators, or anyone else while I was a student at Oconto Falls High School. In order to stop the abuse, I chose not to play basketball during my junior year.

9. The abuse first came to light when I was approximately nineteen or twenty years old. At

2

my parents' urging, I began seeing a counselor. During the course of that counseling, I disclosed what Mr. Fuller had done to me. My counselor, as a mandatory reporter, reported the abuse to the authorities. The Oconto County Sheriff's Department subsequently opened an investigation.

10. As part of the investigation, law enforcement asked me to wear a recording device and attempt to make contact with Mr. Fuller at his residence in order to obtain an admission. Mr. Fuller did not answer his door, and no incriminating statement was obtained. Mr. Fuller was nonetheless convicted, to the best of my recollection in approximately 1995 or 1996. During the criminal proceedings, Mr. Fuller wrote me a letter of apology.

11. Through the criminal investigation, I learned for the first time that at least two school officials had been aware that Mr. Fuller was engaged in an improper relationship with me prior to the investigation and his arrest. Specifically, I was informed by the investigator that Todd Peterson, the head varsity basketball coach at Oconto Falls High School, and Coach Jahnke, a boys' basketball coach at the school, each had knowledge that Mr. Fuller's relationship with me was ongoing and had separately told Mr. Fuller to stop. Neither of them, to my knowledge, escalated the matter to school administration, law enforcement, or any other authority, and no action was taken to protect me.

12. During my time at Oconto Falls, I was also aware that Tod Peterson was interested in a fellow student. He was very attentive to her and everyone talked about Peterson and her having a relationship.

13. During the criminal proceeding, Fuller only received a six-month sentence as part of a plea deal. I later heard that he started coaching at another school. I did not feel like my voice was heard and I did not feel like this was justice for what happened to me.

14. Learning that school personnel had known what was happening and had failed to

3

intervene was deeply upsetting to me. Had they acted, the abuse could have been stopped.

15.  Further Declarant sayeth not.

I declare under penalty of perjury under the laws of the State of Wisconsin that the foregoing

is true and correct to the best of my knowledge.

Executed on this _____ day of _____, 2026.

03/20/2026

Signed by Nicole Coopman

I approve this document
3/20/2026 11:44 PM UTC

_____
Nicole Coopman

4

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

AMANDA WATZKA, BROOKE LA COUNT, )
GRACE WILLIAMS, and BRIANNA KAIN, )
            ) Case No. 26-cv-00392
   Plaintiffs, )
            ) The Hon. Judge Byron B. Conway
v. )
            ) Magistrate Judge Joseph
THE BOARD OF EDUCATION OF )
OCONTO FALLS PUBLIC SCHOOL )
DISTRICT, )
            )
   Defendant. )

## DECLARATION OF REBECCA DOAN

Pursuant to 28 U.S.C. § 1746, Declarant, Rebecca Doan, hereby declares that the following statements are true and correct based upon personal knowledge and that, if called to testify, I would testify consistently herewith:

1. I am an adult resident of Green Bay, Wisconsin and am competent to testify to the matters set forth herein based on my personal knowledge.

2. I attended Oconto Falls High School and graduated in 2014 at the age of 18.

3. In or around October 2013, during my senior year, I was sexually assaulted by a fellow student, referred to herein as "X."

4. The assault occurred at the Oconto Falls High School football field during a camping event held after a football game. I arrived late to the camping event and, because setting up my own tent at that hour was impractical, X. offered to let me share his tent. I accepted.

5. While I was in X.'s tent, X. sexually assaulted me. Specifically, X. ground against me and touched me all over my body without my consent. The assault lasted approximately ten minutes. I pretended to be asleep for the duration of the assault. X. was the only other person in the tent with me, and I am certain X. was the perpetrator.

6. Approximately one month after the assault — around November 2013 — my assault was reported to Principal Bruce Russell. To my understanding, my friend Lexie Neeley had first told a teacher, Mrs. Glover, and Mrs. Glover then informed Principal Russell.

7. I met with Principal Russell in his office to discuss the assault. During that meeting, Principal Russell acknowledged that he would not want something like this to happen to his own daughter, who was a student at the school. I voiced my concern about continuing to share a class with X. Principal Russell told me that if I wanted something done, I should go to the police. No disciplinary action was taken against X.

Signed by Rebecca Doan

I approve this document
3/23/2026 9:08 PM UTC

The signed document can be validated at https://app.vinesign.com/verify

8. As a result of the assault and the school's inaction, I was required to switch out of the gym class I shared with X. and into a different gym class. X. remained in the original class, continued to participate in sports, and remained a normal student at the school. He suffered no consequences.

9. Principal Russell never followed up with me after our single meeting. To my knowledge, no further investigation was conducted by the school.

10. I later learned that X.'s mother was a member of the Oconto Falls school board at the time. I became aware of this because she was present at a school board event at which the board congratulated our cheer team for qualifying for state competition.

11. My assault of X. preceded his assault of my best friend, Lexie. I did not tell Lexie about my assault prior to X.'s assault of her. When Lexie texted me that "something weird" had happened to her, I disclosed to her for the first time that something similar had happened to me. Lexie subsequently reported her assault to Mrs. Glover.

12. Following the assault, I experienced significant emotional and psychological harm. In the year following the assault, I attempted suicide. My thoughts at the time of the attempt were overwhelmed by the assault, and I personally connect my suicide attempt to what X. did to me. I subsequently received approximately ten years of mental health counseling, in part related to this assault.

13. The school's handling of my assault — and, to my knowledge, Lexie's — was terrible. Nothing was done.

14. Further Declarant sayeth not.

       I declare under penalty of perjury under the laws of the State of Wisconsin that the foregoing is true and correct to the best of my knowledge.

03/23/2026

Dated: _____
Signed by Rebecca Doan

I approve this document
3/23/2026 3:08 PM UTC

_____
Rebecca Doan

2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

AMANDA WATZKA, BROOKE LA COUNT,  )
GRACE WILLIAMS, and BRIANNA KAIN,  )
　　　　　　　　　　　　　　　　　　　　)  Case No. 26-cv-00392
　　　　Plaintiffs,  )
　　　　　　　　　　　　　　　　　　　　)  The Hon. Judge Byron B. Conway
v.  )
　　　　　　　　　　　　　　　　　　　　)  Magistrate Judge Joseph
THE BOARD OF EDUCATION OF  )
OCONTO FALLS PUBLIC SCHOOL  )
DISTRICT,  )
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.  )

DECLARATION OF SAM SCHLETTY

　　　　Pursuant to 28 U.S.C. § 1746, Declarant, Sam Schletty, hereby declares that the following statements are true and correct based upon personal knowledge and that, if called to testify, I would testify consistently herewith:

1. When my Spanish teacher went out on maternity leave around 2013-2014 in the spring of 2014, there was a substitute Spanish teacher who started teaching out class. His name was Lucas Cromell. A few days to weeks after he started, he cornered me at the door of the classroom, put his hand on the door frame and stood physically close to me, I saw him looking down my shirt, and he started inquiring what I was doing that weekend. I told him that I had him I had plans with my boyfriend and then left the classroom.

2. After this, he gave me a very uncomfortable vibe, I kept to myself in class, avoided his attention, and tried to avoid his classroom.

3. Further Declarant sayeth not.

　　　　I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Signed by Sam Schletty
Executed on this ___03/16/2026___ _____, 2026.

I approve this document
3/16/2026 7:46 PM UTC

_____
Sam Schletty

The signed document can be validated at https://app.vinesign.com/Verify