IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

AMANDA WATZKA, BROOKE LA COUNT,  )
GRACE WILLIAMS, BRIANNA KAIN, and  )
KAYLA KASPER, and D.P., a minor, by her  )
next friend, BRIANNE CARRIVEAU,  )
                                       )  Case No. 26-cv-00392
     Plaintiffs,  )
                                       )  The Hon. Judge Byron B. Conway
v.  )
                                       )  Magistrate Judge Nancy Joseph
THE BOARD OF EDUCATION OF OCONTO  )
FALLS PUBLIC SCHOOL DISTRICT,  )
                                       )
     Defendant.  )  JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT

AMANDA WATZKA (Amanda), BROOKE LA COUNT (Brooke), GRACE WILLIAMS

(Grace), BRIANNA KAIN (Brianna), KAYLA KASPER (Kayla), and D.P., a minor, by her next friend,

BRIANNE CARRIVEAU (D.P.) (collectively, Plaintiffs), by and through their undersigned counsel,

Cass T. Casper, Esq., DISPARTI LAW GROUP, P.A., submit the following Second Amended

Complaint against THE BOARD OF EDUCATION OF OCONTO FALLS PUBLIC SCHOOL

DISTRICT (Board) (Defendant).

1. This is a civil rights action arising from thirty-five years of sexual abuse, grooming, and

misconduct by teachers, coaches, and staff at Oconto Falls Public School District, and the Board's

deliberate choice, across every instance, to protect abusers rather than its students. The unwritten policy,

practice, and custom at issue in this case, and that Plaintiffs only discovered in 2025 and 2026 is best put

as follows:

**This Defendant has maintained a pervasive unwritten policy, practice, and custom of deliberate
indifference to sexual misconduct in all its forms — whether perpetrated by teachers against
students, by students against other students, or by staff against staff — that deprived Plaintiffs
of their constitutional rights to bodily integrity and personal security under the Fourteenth
Amendment, under which reports were dismissed rather than investigated, perpetrators were
protected rather than disciplined, and those who came forward were silenced, discredited,
penalized, or threatened rather than supported.**

2. Plaintiff Amanda Watzka was groomed and sexually assaulted by her Tech Education teacher, David Heisel, over three years while at least a dozen colleagues and administrators observed their relationship and said nothing.

3. Plaintiff Brooke La Count was repeatedly abused by assistant volleyball coach Brynn Marie Larsen beginning at age fifteen; Athletic Director Jerry Moynihan's response to complaints was a single conversation with Larsen about "boundaries."

4. Plaintiff Grace Williams was assaulted by that same coach four years later — an outcome made possible entirely by the Board's failure to discipline, flag, or report Larsen after she victimized Brooke.

5. Plaintiff Brianna Kain was sexually assaulted by the school's Athletic Trainer, Jason Terry.

6. Plaintiff Kayla Kasper endured consecutive years of open sexual misconduct by Marc Kinziger while no adult intervened, as well as sex-based favoritism by Christian Dory.

7. Plaintiff Brianne Carriveau brings this action as next friend of D.P., a minor, whose 2023 report about middle school gym teacher Jeffrey Trochil was publicly dismissed and discredited by the District through an official press release that shamed and blamed the parents and children who complained. D.P. was subsequently subjected to physical abuse by drama teacher Gayle Gander and was scared to speak up because of the District's prior public shaming.

8. Alexis Neeley reported a classmate's sexual assault to the Principal and Athletic Director Jerry Moynihan; the Principal told her the school could do nothing, and Moynihan told her she had "more healing to do."

9. Rebecca Doan was sexually assaulted by that same student, at the Oconto Falls High School football field — on school grounds — before that student went on to assault Alexis. When Rebecca reported to Principal Russell, he told her to go to the police if she wanted something done. Rather than

2

remove their classmate from their shared gym class, the school required Rebecca to change classes. The classmate faced no consequences. Rebecca later learned that the classmate's family member was on the Oconto Falls school board at the time of both her assault and her report.

10. Nicole Coopman was sexually assaulted fifteen times by basketball coach Early Fuller at age fifteen; two fellow coaches knew and privately told Fuller to stop without ever reporting it. One of those coaches, Todd Peterson, was simultaneously having an illegal sexual relationship with Jennifer Allen while she was on his varsity basketball team at approximately age sixteen.

11. Jen McLeod independently corroborates the misconduct of both Kurt Lietz and Christian Dory. Sam Schletty was cornered and physically harassed by substitute teacher Lucas Cromell. Eric Sypowicz reported to administrators and Superintendent Hess that gym teacher Jeffrey Trochil was making girls bend over in front of him, entering the girls' locker room, touching girls on their thighs, and making sexualized comments. Multiple of his daughter's friends independently corroborated these accounts and broke down in tears. The school's response was that no crime had been committed and that Sypowicz lacked sufficient proof; Superintendent Hess, once Sypowicz expressed frustration, simply stopped communicating with him.

12. Teachers Tania Jersey and Bridget Thomas brought evidence of Lucas Cromell's sexual harassment of teachers — and sexting with a student — directly to the Board of Education in June 2015; the Board promoted him to Associate Principal. In case after case, the Board minimized or dismissed the report, protected the employee, and silenced, shamed, or humiliated the person who came forward. When Plaintiffs Amanda Watzka and Brooke La Count notified the District of their claims in 2025, the District responded by hiring a male lawyer who threatened sanctions if they pursued this case and closed his letter with the directive "be guided accordingly," chilling the administration of justice and putting Amanda and Brooke in fear.

This pattern of abuse, deliberate indifference, and recriminations against women and girls at Oconto Falls Public School District must be stopped.

**INTRODUCTION**

13. This is a civil rights action arising from the sexual grooming and abuse of students at Oconto Falls High School by teachers, coaches, and staff, under circumstances created by the Board's pervasive custom and policy of deliberate indifference to sexual misconduct of all kinds.

14. The theory of Plaintiffs' case against the Board is not simply that they were sexually abused, but that they were abused by teachers and coaches under circumstances created by the Board through its pervasive custom and policy of knowing about teacher-student sexual abuse and failing to act. While Plaintiffs were aware of their abuse, they had no knowledge — and no reason to know — of the Board's unwritten policies, customs, and practices tolerating sexual abuse and grooming across many teachers and students until Fall 2025 and into 2026, when they learned of the full scope of teacher-student sexual abuse at Oconto Falls and the Board's decades-long pattern of ignoring it.

15. In Fall 2025 and 2026, Plaintiffs discovered for the first time that the Board had such unwritten policies, customs, and practices by learning that: (a) at least twelve different teachers and staff members — including David Heisel, Brynn Marie Larsen, Kurt Lietz, Christian Dory, Marc Kinziger, Lucas Cromell, Jason Terry, Gayle Gander, Early Fuller, Todd Peterson, and Jeffrey Trochil — had engaged in grooming and/or sexual abuse as to at least twenty identified victims spanning at least thirty-five years (1988-2025); (b) the Board had responded to student-on-student sexual assault reports by dismissing victims and taking no corrective action; (c) the Board had received substantial evidence of sexual harassment of female staff members, and that the same staff member was sexting with a student, and the Board responded by promoting the individual; and (d) the Board had systematically discredited, shamed, silenced, or threatened students and parents who came forward.

4

16. Amanda, Brooke, Grace, Brianna, and Kayla each bring claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and under the Fourteenth Amendment via 42 U.S.C. § 1983, based on the Board's systemic pattern and practice of deliberate indifference to teacher-student grooming and sexual abuse.

17. Brianne Carriveau, as next friend of D.P., brings a claim under the Fourteenth Amendment via 42 U.S.C. § 1983 based on the Board's deliberate indifference — including its 2023 handling of gym teacher complaints that directly silenced D.P. as a reporter and victim, and its subsequent failure to designate D.P. as a victim following her direct disclosure to law enforcement. All Plaintiffs seek compensatory damages and all other available appropriate relief.

## JURISDICTION AND VENUE

18. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), 42 U.S.C. § 1983, and the Fourteenth Amendment of the United States Constitution.

19. Venue is proper because Defendant Board has its principal place of operation in Oconto Falls, Wisconsin, within this judicial district, and the acts and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

20. Plaintiff Amanda Watzka is an adult resident of this judicial district and was a high school student at Oconto Falls High School during the time of Heisel's grooming and abuse as alleged herein.

21. Plaintiff Brooke La Count is an adult resident of Chicago, Illinois, and was a high school student at Oconto Falls High School during the time of Brynn Marie Larsen's grooming and abuse as alleged herein.

5

22. Plaintiff Grace Williams is an adult resident of Wisconsin and was a high school student at Oconto Falls High School during the time of Brynn Marie Larsen's grooming and abuse in 2018 as alleged herein.

23. Plaintiff Brianna Kain is an adult female resident of Wisconsin and was a high school student at Oconto Falls High School during the time of Jason Terry's sexual misconduct as alleged herein.

24. Plaintiff Kayla Kasper is an adult resident of Sturgeon Bay, Wisconsin, and graduated from Oconto Falls High School in 2012. During her sophomore and junior years, when she was approximately 15 and 16 years old, she was subjected to repeated sexual misconduct by Marc Kinziger and sex-based favoritism by Christian Dory.

25. Plaintiff Brianne Carriveau is an adult resident of Oconto Falls, Wisconsin, and brings this action as next friend of D.P., her minor daughter, solely as to Count 6 (*Monell*). D.P. was enrolled at Oconto Falls Middle School during the 2022-2023 school year and at Oconto Falls High School thereafter, where she participated in the drama program under Gayle Gander's supervision. D.P. came forward with evidence during the 2023 gym teacher investigation, was publicly discredited by the Board's official response, and was subsequently victimized by Gander's repeated unwanted physical contact. Despite disclosing her own victimization directly to Officer Jamie Kuhn following Gander's arrest, D.P. was not designated as a victim in the investigation.

26. Alexis Neeley, not now named as a Plaintiff but having submitted a sworn declaration with her express consent, is an adult resident of St. Paul, Minnesota. She graduated from Oconto Falls High School in 2014 and was sexually assaulted by fellow student in October 2013, while a 17-year-old member of the school's cheer team.

27. Rebecca Doan, not now named as a Plaintiff but having submitted a sworn declaration with her express consent, is an adult resident of Green Bay, Wisconsin. She graduated from Oconto Falls

6

High School in 2014 at age 18 and was sexually assaulted on school property by the same fellow student in October 2013, preceding X.'s assault of Alexis.

28. Eric James Sypowicz, not now named as a Plaintiff but having come forward with his express consent, is an adult resident of Little Suamico, Wisconsin. His daughter attended Oconto Falls Public Schools until approximately mid-year of the 2024-2025 school year, when the family removed her and began homeschooling.

29. Defendant Board of Education of Oconto Falls Public School District is a governmental body exercising jurisdiction over Oconto Falls High School, Oconto Falls Middle School, and other schools within the District, operating within this judicial district.

30. Defendant Board is a recipient of federal funds.

**FACTS COMMON TO ALL COUNTS**

**I. Facts Pertaining to Plaintiff Amanda Watzka**

31. During Amanda's sophomore year at Oconto Falls High School, she first met David Heisel, her Tech Education Teacher. Heisel initially treated Amanda like other students, but became increasingly attentive as her interest in tech ed subjects became apparent. He nominated her for student of the month and gave her the privilege of competing in Skills USA.

32. Beginning during Amanda's sophomore year and continuing through her senior year, Heisel invited Amanda on drives at least weekly — sometimes multiple times per week — covering approximately three years. Destinations included his job sites, restaurants, his house, and his grandmother's house. During these drives, Heisel discussed his sex life with Amanda, inquired about her sexual history and experiences, discussed his marriage, told her his wife had cheated on him, held her hand, made soft and intimate physical contact, and described what life would be like for them after he left his wife. He told her about his family's wealth and that he could marry her and take care of all her

7

problems. He sang to her and made romantic comments. He also engraved his initials after Amanda's name on her tools.

33. As a result of Heisel's grooming, Amanda began perceiving herself as being in a romantic relationship with Heisel, turned down a male student who had expressed romantic interest in her, and babysat Heisel's child without pay. Heisel became defensive whenever Amanda interacted with other boys.

34. In or about Spring 2012, Amanda attended a Skills USA competition at Chula Vista Resort in Wisconsin Dells. Heisel entered Amanda's hotel room and scoped out the room and bathrooms. Amanda immediately felt threatened and fled to the hallway. Heisel followed her into the hotel stairway, where he coerced her by asking if she was "just a tease." Amanda allowed Heisel to place her sitting on a window rail. He inserted himself between her legs, removed her top, groped her breasts, and kissed her repeatedly. Heisel unbuttoned her belt and pulled her pants down around her ankles. He stood between her legs with his erection felt against her body, his own belt unbuckled and pants unzipped. He sexually assaulted her during this incident. Amanda was 17 years old at the time.

35. Amanda always remembered the facts of what occurred between her and Heisel. However, due to her youth, Heisel's manipulation, and the grooming process, she did not understand until March and April 2025 that Heisel's conduct was predatory, criminal, and constituted actionable civil wrongs. She did not know until 2025 that the Board had knowledge of a pervasive pattern and practice of teacher-student sexual abuse at Oconto Falls or that the Board's institutional conduct had created the conditions enabling her abuse.

36. Amanda learned in 2025 that multiple school officials had observed, received reports about, or had actual knowledge of Heisel's inappropriate relationship with her but failed to act. Specifically, multiple teachers and administrators — including Tracy Tate, John Bursa, Mr. Karbon, Art Paulson, Matt Beschta, Marc Kinziger, Dave and Jill Braiser, Kurt Lietz, Gayle Gander, Carla Nielsen,

8

administrators Bruce Russell and Lou Hobyan, the school secretary, and school janitors Bob and John — observed Amanda and Heisel together in off-hours in his office and classroom on multiple occasions over three years. Amanda had confided in teacher Tracy Tate about her relationship with Heisel. Amanda wrote a disturbing senior paper describing how broken she was — referencing a teacher who shared personal home life details with her — and submitted it to Christine Glover. Amanda was placed on an adults-only wrestling list alongside Heisel. Other students regularly referred to Amanda as Heisel's "teacher's pet." Despite all of this, not one school official reported the relationship or took protective action.

37. Amanda also learned in 2025 that the Board had knowledge of a pervasive pattern and practice of teacher-student sexual abuse involving multiple teachers and multiple victims spanning years, including that Athletic Director Jerry Moynihan had actual knowledge of Brynn Marie Larsen's abuse of Brooke in 2013-2014 and responded only by having "a discussion with Brynn about boundaries." The Board's pattern of knowledge and failure to act spanned at least thirty-five years, involved at least twelve different teachers, and affected at least twenty identified victims. Amanda did not learn that the Board injured her through its own institutional conduct until 2025.

38. Amanda's experience with Heisel caused her severe mental and emotional harm, including complex PTSD, depression, anxiety, hypervigilance, and low self-esteem, all ongoing.

## II. Facts Pertaining to Plaintiff Brianna Kain

39. Brianna Kain was a female student at Oconto Falls High School from approximately 2010 through 2012. During this time, she was subjected to sexual misconduct by Jason Terry, who was employed by the Board as Athletic Trainer to students. His conduct included pressing his pelvis against Brianna in a sexually inappropriate manner during athletic training duties and placed her in sexual positions in a private room under the auspices of training. At the time, Brianna was a minor under the

9

supervision and care of the Board, and Jason Terry occupied a position of authority over her with professional access to students' bodies.

40. Brianna always remembered the facts of what occurred but did not understand until 2025 that Terry's conduct was predatory and constituted actionable civil wrongs, or that the Board's deliberate indifference had created the conditions for her abuse. In Fall 2025, Brianna learned for the first time through Amanda Watzka's disclosures and subsequent investigation that the Board had knowledge of Jason Terry's sexual misconduct with female students — including that Amara Calmes had reported observing Terry alone with a female classmate in the athletic training room in suspicious circumstances to Dawn Larsen, a mandated reporter and Board employee, who dismissed the report without investigation — and that the Board had consistently failed to investigate, discipline, or take protective action. Brianna did not learn that the Board injured her through its own institutional conduct until 2025.

41. Brianna's experience with Jason Terry caused her harm and damages, the full extent of which will be proven at trial.

### III. Facts Pertaining to Declarants Alexis Neeley and Rebecca Doan

42. In October 2013, Alexis Neeley — then a 17-year-old member of the Oconto Falls High School cheer team — was sexually assaulted by a fellow student during an off-campus overnight. That student pulled Alexis on top of him and sexually assaulted her for approximately 10 to 15 minutes despite her repeated objections. Alexis subsequently wrote about the experience in a creative writing assignment. Teacher Christine Glover recognized the account as describing an assault, required Alexis to report it, and reported it herself to Principal Bruce Russell.

43. Principal Russell told Alexis that because the incident had not occurred on school grounds, there was nothing the school could do. Athletic Director Jerry Moynihan responded to Alexis's specific requests that the student be removed from certain activities by telling her she "had more healing to do" and took no action. The student remained in sports and activities without consequence. No formal

10

investigation was initiated, no CPS referral was made, and Alexis received no counseling or support. The experience caused Alexis lasting psychological harm; as recently as February 2026, she broke down during jury selection in a rape case and was dismissed.

44. That same month, Rebecca Doan was sexually assaulted by the same student on school property — at the Oconto Falls High School football field — during a post-game camping event. The student ground against her and touched her all over her body without consent for approximately ten minutes while she pretended to be asleep. When Rebecca reported to Principal Russell approximately one month later, he told her that if she wanted something done, she should go to the police. No disciplinary action was taken against the student. As a result, Rebecca — not the perpetrator — was required to switch out of their shared gym class. Rebecca later learned that the perpetrator was related to a member of the Oconto Falls school board at the time of both assaults and both reports to Principal Russell — a Board policymaker with a direct personal stake in the absence of accountability for the perpetrator's conduct. Rebecca attempted suicide in the year following the assault and received approximately ten years of mental health counseling.

45. Principal Russell thus received simultaneous notice via Christine Glover that a single student had sexually assaulted two different female students within the same month — including one assault on school grounds — and responded identically in both cases with no investigation, no CPS referral, no counseling, no support, and no consequences. Neither Alexis nor Rebecca learned until 2025-2026 that these responses were part of a broader institutional pattern of deliberate indifference encompassing at least twelve teachers and staff engaged in sexual misconduct spanning thirty-five years.

**IV. Facts Pertaining to Plaintiff Kayla Kasper**

46. Kayla Kasper graduated from Oconto Falls High School in 2012. During her sophomore and junior years — when she was approximately 15 and 16 years old — she was a student in Marc Kinziger's social studies classes. From the beginning, Kinziger made Kayla deeply uncomfortable through a

11

persistent pattern of sexual conduct. He regularly stood at the front of the class and touched himself in his pocket during lectures, on a daily basis, across two consecutive school years. This conduct was so well-known among students that Kinziger had a student-given nickname based on it.

47. Beyond his conduct at the front of the classroom, Kinziger repeatedly approached Kayla at her desk, leaned down, and caressed her shoulder, arm, and neck in a manner she can only describe as a caress, breathing down the back of her neck. On one occasion during a movie screening, he squatted behind Kayla, rubbed her shoulder, whispered to her that she was sexy, and told her that if she came to see him after class, he could give her additional study materials for an upcoming quiz. He told her she was pretty and commented on how good her body looked. He attended school sporting events where he saw Kayla in her athletic uniform. Kayla never went to see him after class.

48. As a result of Kinziger's conduct, Kayla deliberately left quiz and worksheet questions blank to avoid interaction with him, accepted failing scores to avoid raising her hand, positioned herself during a lockdown drill so he could not approach her, and dreaded attending his class every day across two school years. She lost educational opportunity because engaging with the subject matter meant risking proximity to him. Kayla also had Christian Dory as her English teacher during her senior year. Dory granted her special privileges, gave her unwarranted favorable grades, and permitted her to refuse class exercises he did not similarly excuse for other students. Kinziger and Dory were close colleagues who frequently socialized together during school hours; students widely knew that both teachers attended parties with underclassmen.

49. Kayla never reported Kinziger's and Dory's conduct because she did not believe anyone would act — a belief consistent with, and reflective of, the Board's pervasive custom and practice of deliberate indifference to teacher-student sexual misconduct. She did not know until 2025 that her belief was justified by decades of institutional failure. Kayla's experience has caused lasting harm including

12

depression, anxiety, and suicidal ideation. She has a young daughter, and the prospect of her daughter beginning school causes Kayla significant fear and distress because of what she experienced.

**V. Facts Pertaining to Plaintiff Brooke La Count**

50. In the summer before her sophomore year, Brooke participated in volleyball camp at Oconto Falls High School. Brynn Marie Larsen was an assistant volleyball coach and substitute teacher at the school. Dawn Larsen, Brynn's mother, was the head coach, a health education teacher, and a mandated reporter under Wisconsin law.

51. Around August 2013, when Brooke had just turned 15 years old, Brynn Marie Larsen began sending Brooke Snapchat messages late at night, sent photographs of her naked body, and pressured Brooke to reciprocate. Brooke felt confused and pressured because Larsen was one of her volleyball coaches. At their first in-person meeting, Larsen asked Brooke to get into the backseat of her SUV and engaged Brooke in sexual activity. Larsen told Brooke she could turn her into a college athlete and began attempting to separate Brooke from her family. That fall 2013, Larsen began having Brooke sleep in her bed, where Larsen would sleep nude and engage or attempt to engage Brooke in sexual acts, and played pornography on her television. Dawn Larsen was present in the home on multiple occasions when Brooke and Brynn Marie Larsen slept in the same bed and snuggled on the couch, yet never filed a mandatory report.

52. In 2013, a report was made to Athletic Director Jerry Moynihan about Brynn Marie Larsen's improper conduct with Brooke. Moynihan's only response was to pull Larsen aside and tell her to be more careful, permitting her to continue as assistant coach. A police investigation occurred in May-June 2014. The investigating officer confirmed that Moynihan had told him "he remembered people complaining to him about seeing Brynn and Brooke together" and that "he did have a discussion with Brynn about boundaries." Despite the police investigation, the Board failed to discipline Larsen, flag her conduct to licensing authorities, or prevent her from being hired at the School District of Waupaca in

13

fall 2014. In fall 2014, Brooke transferred out of Oconto Falls High School due to peer harassment resulting from Larsen's grooming and abuse.

53. Brooke did not know until 2025 about the massive extent of teacher-student sex abuse pervading the school environment, nor about the Board's unwritten policies and practices of failing to act. Through Amanda Watzka's contact in 2025, Brooke learned for the first time that despite the 2014 police investigation, the Board permitted Larsen to return to Oconto Falls as a substitute teacher in 2018, where she victimized Grace Williams in substantially the same manner. Brooke did not learn that the Board injured her through its own institutional conduct until 2025.

## VI. Facts Pertaining to Plaintiff Grace Williams

54. Grace Williams was a 17-year-old junior at Oconto Falls High School during the 2017-2018 school year. Brynn Marie Larsen had returned to Oconto Falls School District as a substitute teacher. In or about February 2018, Larsen added Grace on Snapchat, aware that Grace had come out as bisexual. Larsen told Grace she loved her and wanted to leave her girlfriend for Grace, sent flowers to Grace in class, and began substituting into Grace's classes.

55. Larsen invited Grace to her house. When Grace arrived, Larsen asked Grace to come to the bedroom and began making out with her. Grace then saw Dawn Larsen — present in the home — who made direct eye contact with Grace as she fled the bedroom. Dawn Larsen did not file a mandatory report. Grace eventually disclosed the abuse to a friend, who reported it to School Resource Officer Jamie Kuhn. Despite reports to Kuhn, the principal, and the guidance counselor, the Board conducted no formal investigation, never formally interviewed Grace, and provided no emotional support or counseling. Students began blaming Grace for Larsen's departure. Grace's story "was not taken seriously" and "no one really cared."

56. Although Grace always remembered Larsen's abuse, she did not know until 2025 that the Board had received prior reports about Larsen's abuse of Brooke in 2013-2014 and had failed to act on

14

those reports, thereby enabling Larsen to return to Oconto Falls and abuse Grace four years later. That information was entirely within the Board's own control. Grace's claims accrued in 2025, when she first discovered the Board's role in enabling Larsen's access to her.

**VII. Facts Pertaining to the Board's Pattern and Practice of Deliberate Indifference**

57. The sexual abuse and grooming of Amanda, Brooke, Grace, Brianna, and Kayla did not occur in isolation, but within a pervasive culture at Oconto Falls School District in which sexual misconduct of all kinds — teacher-student abuse and grooming, student-on-student sexual assault, and sexual harassment of female staff members — was widespread, known to school officials through reports and direct observations, and tolerated without meaningful consequence across all schools within the Board's jurisdiction.

58. **Kurt Lietz and Christian Dory.** Lietz was a teacher at Oconto Falls High School who engaged in sexual misconduct with a former female student, and who told 14-year-old freshman Jen McLeod, while alone with her after class with the classroom door closed, that he and senior boys had compiled a "top 5 hottest girls" list and that she was on it. Lietz made inappropriate comments about Jen McLeod's body throughout her high school years. Lietz also gave Heisel a conspicuous grin when encountering Heisel and Amanda walking the hallway together. Christian Dory permitted students to leave class if they flirted with him, required female students to retrieve keys from his front pocket in a sexualized manner — conduct directly observed by Jen McLeod as to herself and another student — and provided unwarranted favorable grades. Both Lietz and Dory, then in their thirties, regularly attended high school student parties and provided alcohol to minors; students perceived this as normal. Jen McLeod's sworn declaration independently corroborates all behavioral patterns attributed to both teachers, including the keys-from-pocket conduct, the student parties, and Lietz's misconduct with a student.

15

59. **Marc Kinziger.** In addition to his conduct with Kayla described above, Madison Pecha personally observed Kinziger rub his genitals against female students' desks approximately twenty times during classroom instruction, with his genitals visible through his pants; this conduct was directed exclusively at female students. In 2016, Kinziger proposed that a former female student babysit for him for an entire summer, and in 2017 sent her inappropriate social media messages while married.

60. **Lucas Cromell.** Lucas Cromell served successively as a substitute teacher, Spanish teacher, Dean of Students, and Associate Principal at the District. While substituting, Cromell cornered Sam Schletty at the classroom door, placed his hand on the door frame, stood physically close to her, looked down her shirt, and inquired about her weekend plans. Cromell was verbally inappropriate with a female student on multiple occasions while substituting in her classes; after her graduation, he propositioned her to be his "sugar baby" and made persistent inappropriate social media contact. During the 2012-2015 period, Cromell repeatedly sexually harassed female staff members at Washington Middle School — including Tania Jersey and Bridget Thomas — asking how to perform sexual acts and requesting demonstrations including oral sex. When Thomas reported Cromell's conduct to Principal Lou Hobyan, Hobyan responded: "Bridget, I gotta back my Dean of Students. If you want, I'll write you a letter of recommendation, and you can go somewhere else." During the 2015-2016 school year, Cromell was discovered to have sent explicit sexting messages to a student; Thomas reported this to Superintendent Hess, who accused her of "spreading drama," told her to "get herself in line," and stated he had looked at Cromell's phone and found nothing. Thomas was non-renewed shortly thereafter. During the 2014-2015 school year, at least four female teachers — including Tania Jersey and Bridget Thomas — presented the Board of Education and/or the Superintendent directly with a substantial packet of documentary evidence, including emails and text messages, of Cromell's sexual harassment, and information about him sexting a student. A Board member personally told Jersey the evidence was credible. The community filled the District office beyond capacity for that meeting. The Board took no

16

disciplinary action and instead approved Cromell's promotion to Associate Principal at a subsequent summer meeting posted only at school buildings with minimal public notice. All complaining teachers left the District. Cromell is now employed as an administrator at another district. The Board's affirmative promotion of Cromell over documented, evidence-backed objections presented directly to it demonstrates that the Board's deliberate indifference was not passive neglect but an active institutional choice.

61. **Gayle Gander.** Gayle Gander was a staff member, drama teacher, and director at Oconto Falls High School who engaged in sexual misconduct with male students for at least twenty years. A former male student later disclosed: "I wish I had the courage to speak up about Gander back in 05 but I didn't." An additional former male student — a minor during his enrollment — reports that on approximately three occasions, Gander removed him from public areas, took him to a back room within the school, directed him to remove his shirt, provided "very sensual massages" to his chest, back, and lower hips, had him lie face-down while Gander walked on his back while audibly moaning, and specifically directed him not to tell anyone he had been in the back room with Gander. Madison Pecha was groomed by Gander as his "favorite" student over multiple years, consistently cast as the love interest in school productions. During her senior year, Gander invited her inside his home to retrieve keys, announced his wife was not home, and positioned himself between Pecha and the door — she maneuvered around him and left. D.P. was subjected to Gander's repeated unwanted shoulder massages during the drama program. On December 15, 2025, Gander was arrested on criminal charges arising from reports by five additional student victims during his employment at the District. The photograph leading to Gander's arrest was taken by D.P.

62. **Jason Terry.** Terry pressed his pelvis against Brianna Kain and other female students during his duties as Athletic Trainer. Amara Calmes walked into the athletic training room and observed Terry alone with a female classmate in suspicious circumstances — both appeared startled and moved quickly

17

from each other. Calmes reported this to Dawn Larsen, a Board employee and mandated reporter, who responded they were "probably not doing anything" and took no further action, in violation of her mandatory reporting obligations under Wisconsin law.

63. **Early Fuller and Todd Peterson.** Early Fuller repeatedly sexually assaulted Nicole Coopman on approximately fifteen occasions while she was a 15-16-year-old student in approximately 1990-1992. Fuller told Coopman the abuse "had to be our secret." Coaches Todd Peterson and Jahnke each had independent knowledge that Fuller's relationship with Coopman was ongoing and each separately told Fuller to stop, without escalating to administration, law enforcement, or any other authority. Todd Peterson was simultaneously engaged in an ongoing illegal sexual relationship with Jennifer Allen, a varsity basketball player, beginning when she was approximately 16 years old in approximately 1988-1993. The relationship was openly known in the school community; Peterson's wife, employed as a school counselor at Oconto Falls High School, acknowledged rumors directly to Allen in the school hallway. No school official, teacher, counselor, or administrator ever intervened, made a report, or took any action to stop it. Peterson was later hired as a licensed teacher within the same District and taught until retirement in approximately 2020.

64. **Jeffrey Trochil, D.P., and the Board's 2023 Public Shaming.** Jeffrey Trochil, a physical education teacher at the middle school, entered the girls' locker room without permission on multiple occasions, touched female students on their thighs during stretches, made sexualized comments, required girls to perform exercises bending over in front of him while he watched, and stared at girls during activities. Prior to any public disclosure, Brianne Carriveau personally reported D.P.'s concerns to school administration and was told D.P. was "dramatic." Another parent reported similar concerns and possessed emails from Superintendent Hess indicating the concerns were not serious. A third parent spoke with Vice Principal Dunks and received no action. After individual reports yielded no response, Carriveau posted on the "Parents of Oconto Falls Schools" Facebook page in January 2023, generating

18

over one hundred confirming responses from additional parents. On February 17, 2023, the District issued a public statement — attached as Exhibit 1 — concluding the investigation with no findings of wrongdoing, characterizing the social media discussion as a "significant threat to the staff member's professional and personal well-being," and warning the community against making future allegations on social media. This statement was distributed to all District parents. D.P. had submitted Snapchat screenshots from multiple students to Principal Jeffers during the investigation; Jeffers reviewed them on D.P.'s phone and sent her back to class without requesting copies or taking further action. The February 17 statement destroyed D.P.'s trust in the institution and directly caused her to remain silent when Gander subsequently subjected her to repeated unwanted physical contact during the drama program. In 2024-2025, Eric Sypowicz reported to Middle School administrators and Superintendent Hess that Trochil was continuing to engage in substantially the same conduct with female students. Multiple of his daughter's friends independently corroborated the accounts and broke down in tears during those conversations. The school's response was that no crime had been committed and that Sypowicz lacked sufficient proof; Superintendent Hess ceased communicating with Sypowicz after he expressed frustration. The Sypowicz family withdrew their daughter and began homeschooling her. The Sypowicz complaints confirm that Trochil's conduct continued well after the Board's February 2023 public exoneration of him.

65. **D.P.'s Victimization and the Board's Failure to Designate Her as a Victim.** The day following Gander's December 2025 arrest, Carriveau brought D.P. to school to meet with Officer Jamie Kuhn and Assistant Principal Pendl. Carriveau explicitly informed them that D.P. had taken the photograph that led to Gander's arrest, that the photograph was on D.P.'s phone, and offered to surrender the phone as evidence. The photograph is attached as Exhibit 3. Officer Kuhn and Pendl did not request the phone. D.P. disclosed to Officer Kuhn during that same meeting that she had been subjected to Gander's repeated unwanted shoulder massages during the drama program. Officer Kuhn

19

acknowledged this disclosure and stated she would follow up. She never did. The investigation concluded without D.P. being designated as a victim; she was listed only as a witness. No school or law enforcement official contacted Carriveau or D.P. after that meeting.

66. **Amara Calmes.** Amara Calmes attended Oconto Falls High School from approximately 2013 through 2017. Over the course of four years, Calmes disclosed to at least eight Oconto Falls High School employees that drug-addicted acquaintances of her mother had moved into her home and were touching her inappropriately, that she was scared, and that she needed help. Of the eight school employees informed — all mandatory reporters under Wisconsin Statutes § 48.981 — only Mr. Burish took meaningful action. The other seven failed to contact authorities, refer Calmes to services, or follow up with her. The abuse at home continued through her senior year. Calmes also personally observed Kurt Lietz giving massages to female students in the classroom.

67. **School Officials' Knowledge and Failure to Act.** The pattern of abuse was known to school officials through reports or direct observations, yet was tolerated without meaningful investigation, discipline, or protective measures. Athletic Director Jerry Moynihan received complaints about Larsen and Brooke in 2013 and responded only by having "a discussion with Brynn about boundaries." Moynihan also told Alexis Neeley she "had more healing to do" after she reported a sexual assault in that same school year, and took no action. Principal Bruce Russell received simultaneous notice that a single student had sexually assaulted two different female students within the same month — including one assault on school grounds — and responded identically in both cases with no investigation, no CPS referral, no consequences for X., and no support to either victim. Multiple teachers and administrators observed Amanda and Heisel together in off-hours over three years, and not one of them reported the relationship or took protective action. Dawn Larsen failed to file mandatory reports on three separate occasions — regarding Brooke, Grace, and her dismissal of Amara Calmes's report about Jason Terry. Multiple female teachers presented the Board directly with documented

20

evidence of Cromell's misconduct in June 2015 closed session, and the Board promoted him to Associate Principal. Gander engaged in sexual misconduct with students beginning at least as early as 2005 and continued for at least twenty years without the Board taking meaningful action.

68. **No Meaningful Action Across the Entire Pattern.** In each instance described above, school officials with decision-making authority received credible reports of employee or student sexual misconduct, took no meaningful action, and in some instances took adverse action against those who came forward. No formal investigation was initiated as a result of any report across the entire documented thirty-five-year pattern. The Board's failure was not limited to any single school, perpetrator, or time period; the pattern spans both Oconto Falls High School and Middle School, involved at least twelve different teachers and staff members, and affected at least twenty identified victims and reporters spanning at least 1988 through 2025.

69. **The Board's Swift Action in December 2025 Demonstrates Capability.** The Board's response to Gander's arrest in December 2025 — immediately removing him from his position upon receiving a report of his arrest — demonstrates that it possessed both the authority and capability to take immediate protective action when allegations were communicated to school officials. This contrasts sharply with its decades-long failure to act on substantially similar reports involving Heisel, Brynn Marie Larsen (2013, 2014, and 2018), Jason Terry, Kurt Lietz, Christian Dory, Marc Kinziger, Lucas Cromell, Early Fuller, Todd Peterson, Jeffrey Trochil, and Gander himself since at least 2005. Of note, Plaintiffs Watzka and La Count notified the District of their claims prior to Gander's arrest.

70. **Systemic Silencing of Victims.** The Board's pervasive custom and practice of deliberate indifference systematically silenced victims. Kayla did not report Kinziger's and Dory's conduct because she did not believe anyone would act. Madison Pecha did not report Gander's conduct because she felt at fault for entering his home and feared consequences. Rebecca Doan did not initially report her assault because she shared the assailant's social circle; when she did report, she was required to change classes

21

while her assailant faced no consequences. D.P. did not report Gander's conduct during the drama program because the Board's 2023 public statement destroyed her trust in the institution. A former male student did not report Gander's conduct because Gander specifically instructed him not to tell anyone. Nicole Coopman chose not to play basketball during her junior year to stop the abuse rather than disclose it while a student. Alexis Neeley reported and was dismissed by both the Principal and the Athletic Director. Sam Schletty kept to herself in class and avoided Cromell's attention, having no confidence that reporting would result in any action.

71. **The Prevalence of Teacher Misconduct Was Perceived as Normal.** The prevalence of teacher misconduct at Oconto Falls was so widespread that students perceived it as normal. Jen McLeod described Lietz and Dory's regular attendance at student parties and provision of alcohol to minors as conduct that "felt normal to students." Kayla described students' awareness of Kinziger's classroom self-touching, noting students had assigned him a nickname based on it.

72. **The Board's Pre-Suit Threatening Letter.** On August 22, 2025, Plaintiffs' counsel sent a letter to the District, accompanied by a draft complaint, notifying the District of Plaintiffs' claims and providing an opportunity to respond before suit was filed. Rather than engage with the substance of the allegations, the District's counsel responded on September 26, 2025 with a three-page letter that opened with an immediate threat of Rule 11 sanctions if the complaint was filed, repeated this threat in its concluding paragraphs, and closed with the directive: "Please be guided accordingly." The letter characterized the filing of a complaint on behalf of sexual abuse survivors as an act of harassment of the District, employed sarcasm and condescension throughout, described Plaintiffs' legal theories as frivolous, and framed Plaintiffs' potential arguments with dismissive language. The letter made no inquiry into the allegations, offered no substantive engagement with the identified victims' experiences, and contained no acknowledgment of merit warranting investigation or response. This letter is reproduced as Exhibit 4. The same institutional reflex that caused school administrators to tell a parent

22

D.P. was "dramatic," caused Superintendent Hess to ask a victim why she had not spoken up sooner, caused Athletic Director Moynihan to respond to reports of sexual assault with a conversation about "boundaries," and caused the District to publicly characterize reporting students as a threat to a teacher's wellbeing — that same reflex manifested, without interruption, the moment Plaintiffs' counsel appeared. The pattern did not end when lawyers became involved. It continued.

## COUNTS

### COUNT 1 — VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a)
### (Plaintiff Amanda v. Defendant Board)

73. Amanda restates, realleges, and incorporates by reference all preceding paragraphs as if fully stated herein.

74. The Board is a recipient of federal financial assistance and subject to Title IX, 20 U.S.C. § 1681(a). Amanda is female and was a student at Oconto Falls High School. From approximately 2010 through 2013, Defendant Heisel, acting as Amanda's Tech Education Teacher and in a position of authority over her, subjected Amanda to ongoing grooming and sexual abuse because of her sex, including: repeated personal and sexual conversations while she was a minor; repeated intimate physical contact including hand-holding and groping; a sexual assault in the hotel stairway at the Skills USA competition in Wisconsin Dells when Amanda was 17; and the three-year grooming campaign described herein. Heisel's sex-based harassment and abuse was so severe and pervasive that it altered the conditions of Amanda's education, including by causing her to form a false belief that she was in a romantic relationship with Heisel, causing her to reject healthy peer relationships, and stunting her normal social and emotional development.

75. The Board had actual knowledge of Heisel's conduct through the observations and knowledge of multiple school officials as set forth above. Despite this actual knowledge, the Board was deliberately indifferent to Heisel's conduct and failed to investigate or take protective action. The

23

Board's deliberate indifference is further demonstrated by its knowledge of teacher-student sexual abuse by multiple other teachers during the same period — including reports to Moynihan about Larsen's abuse of Brooke in 2013, the 2014 police investigation of Larsen, and the Board's knowledge of misconduct by Kurt Lietz, Christian Dory, Marc Kinziger, Lucas Cromell, Gander, and others — yet the Board consistently failed to investigate, discipline, or otherwise act. The Board's custom and practice of failing to act created an environment in which teachers understood they could abuse students without consequence, thereby enabling Heisel's ongoing abuse of Amanda.

76. As a result of Heisel's grooming and abuse and the Board's deliberate indifference, Amanda suffered and continues to suffer damages including loss of equal educational opportunity, complex PTSD, depression, anxiety, hypervigilance, low self-esteem, and substance abuse issues.

WHEREFORE, Plaintiff Amanda respectfully requests that this Court enter judgment in her favor against the Board, award compensatory damages in an amount to be determined at trial, enter injunctive relief requiring the Board to institute adequate policies and procedures to prevent teacher-student grooming and sexual abuse, and grant such other relief as the Court deems just and proper.

### COUNT 2 — VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a)
#### (Plaintiff Grace v. Defendant Board)

77. Grace restates, realleges, and incorporates by reference all preceding paragraphs as if fully stated herein.

78. The Board is a recipient of federal financial assistance and subject to Title IX. Grace is female and was a student at Oconto Falls High School. From approximately February through April 2018, Brynn Marie Larsen, acting as Grace's substitute teacher and in a position of authority over Grace, subjected Grace to ongoing grooming and sexual abuse because of her sex, including: initiating a romantic relationship via Snapchat; sending flowers to Grace in class; substituting into Grace's classes to gain access; and sexually assaulting Grace in Larsen's bedroom while Grace was a 17-year-old minor

24

student. Larsen's harassment and abuse was so severe and pervasive that it altered the conditions of Grace's education, causing emotional distress, fear of reporting, loss of peer relationships due to student blame, and ongoing harm.

79. The Board had actual knowledge of Larsen's abuse of Grace through reports to School Resource Officer Kuhn, notification of the principal, and notification of the guidance counselor, yet conducted no formal investigation, never formally interviewed Grace, and provided no counseling or support. Most significantly, the Board had received prior reports about Larsen's abuse of Brooke through complaints to Moynihan in 2013 and through the 2014 police investigation, yet failed to properly flag, report, or discipline Larsen — failures that directly enabled Larsen to return to Oconto Falls and abuse Grace four years later. The Board had the authority and capability to protect Grace and deliberately chose not to exercise it, as demonstrated by its immediate removal of Gander in December 2025.

80. As a result of Larsen's grooming and abuse and the Board's deliberate indifference, Grace suffered and continues to suffer damages including loss of equal educational opportunity, emotional distress, harm caused by being blamed for Larsen's departure, and ongoing harm.

WHEREFORE, Plaintiff Grace respectfully requests that this Court enter judgment in her favor against the Board, award compensatory damages in an amount to be determined at trial, enter injunctive relief, and grant such other relief as the Court deems just and proper.

### COUNT 3 — VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a)
#### (Plaintiff Brooke v. Defendant Board)

81. Brooke restates, realleges, and incorporates by reference all preceding paragraphs as if fully stated herein.

82. The Board is a recipient of federal financial assistance and subject to Title IX. Brooke is female and was a student at Oconto Falls High School. From approximately August 2013 through the

25

summer of 2014, Brynn Marie Larsen, acting as Brooke's assistant volleyball coach and substitute teacher and in a position of authority over Brooke, subjected Brooke to ongoing grooming and sexual abuse because of her sex, including: initiating a romantic and sexual relationship via Snapchat while Brooke was a 15-year-old minor; sending Brooke photographs of her naked body and pressuring her to reciprocate; engaging Brooke in sexual activity at their first in-person meeting; requiring Brooke to sleep in her bed and engaging or attempting to engage Brooke in sexual acts on multiple occasions; exploiting the coach-athlete power differential to isolate Brooke from her family; and continuing contact and sexual conduct even after a police investigation began in May-June 2014. This abuse was so severe and pervasive that it caused Brooke to become isolated from family and peers and ultimately forced her to transfer out of Oconto Falls High School.

83. The Board had actual knowledge of Larsen's conduct through Athletic Director Moynihan's receipt of complaints in 2013, Dawn Larsen's in-home observations, Lee Kournaus's observations of Brooke and Larsen together outside school (including at his own girlfriend's house), and the 2014 police investigation. Despite this actual knowledge, the Board was deliberately indifferent: Moynihan's only response was "a discussion with Brynn about boundaries"; the Board failed to discipline, flag, or report Larsen following the 2014 police investigation; and the Board subsequently permitted Larsen to return to Oconto Falls as a substitute teacher in 2018, where she abused Grace. The Board had the authority and capability to protect Brooke and deliberately chose not to exercise it.

84. As a result of Larsen's grooming and abuse and the Board's deliberate indifference, Brooke suffered and continues to suffer damages including loss of equal educational opportunity, forced transfer from her high school, emotional distress, and other ongoing harm.

WHEREFORE, Plaintiff Brooke respectfully requests that this Court enter judgment in her favor against the Board, award compensatory damages in an amount to be determined at trial, enter injunctive relief, and grant such other relief as the Court deems just and proper.

26

## COUNT 4 — VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a)
### (Plaintiff Brianna v. Defendant Board)

85. Brianna restates, realleges, and incorporates by reference all preceding paragraphs as if fully stated herein.

86. The Board is a recipient of federal financial assistance and subject to Title IX. Brianna is female and was a student at Oconto Falls High School. During approximately 2010 through 2012, Jason Terry, acting as Athletic Trainer and in a position of professional authority and trust over Brianna, subjected Brianna to sexual misconduct because of her sex by repeatedly pressing his pelvis against her body in a sexually inappropriate manner during the course of his athletic training duties. Such sex-based misconduct altered the conditions of Brianna's education by subjecting her to unwanted sexual contact within the school environment by a school employee in a position of authority, creating a hostile and harmful educational environment.

87. The Board had actual knowledge of Terry's inappropriate conduct with female students through: Amara Calmes's report to Dawn Larsen — a Board employee and mandated reporter — of observing Terry alone with a female student in the athletic training room in suspicious circumstances, which Larsen dismissed without investigation, escalation, or mandatory report; information circulating within the school community that Terry was engaged in sexual conduct with students; and the Board's broader receipt of reports and observations about the pattern of teacher-student sexual misconduct described throughout this Complaint. Despite this actual knowledge, the Board was deliberately indifferent and failed to investigate or take protective action.

88. As a result of Terry's misconduct and the Board's deliberate indifference, Brianna suffered and continues to suffer damages, the full extent of which will be proven at trial.

27

WHEREFORE, Plaintiff Brianna Kain respectfully requests that this Court enter judgment in her favor against the Board, award compensatory damages in an amount to be determined at trial, enter injunctive relief, and grant such other relief as the Court deems just and proper.

### COUNT 5 — VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a)
### (Plaintiff Kayla v. Defendant Board)

89. Kayla restates, realleges, and incorporates by reference all preceding paragraphs as if fully stated herein.

90. The Board is a recipient of federal financial assistance and subject to Title IX. Kayla is female and was a student at Oconto Falls High School. During approximately 2009 through 2011, Marc Kinziger, in a position of authority over Kayla, subjected Kayla to ongoing sexual misconduct because of her sex, including: daily self-touching in the presence of students; repeated unwanted physical contact consisting of caressing Kayla's shoulder, arm, and neck at her desk while breathing on her; whispering to her that she was sexy; offering study materials in exchange for an after-class private visit; and making repeated comments about her appearance and body — across two consecutive school years while Kayla was approximately 15 and 16 years old. Kinziger's sex-based misconduct was so severe and pervasive that it substantially altered the conditions of Kayla's education: she deliberately left quiz and worksheet questions blank to avoid interaction with him; accepted failing scores on individual assignments rather than raise her hand; was unable to focus on the subject matter of his courses; positioned herself during a lockdown drill to prevent his approach; and dreaded attending his class every day across two school years.

91. The Board had actual or constructive knowledge of Kinziger's conduct: his daily self-touching at the front of his classroom was visible to any school official who entered or passed the classroom; his conduct was so pervasive that the student body assigned him a nickname based on it; it occurred across at least two consecutive school years — yet no school official intervened or reported it.

28

The Board's deliberate indifference is further demonstrated by its knowledge of pervasive teacher-student sexual misconduct by multiple other staff members during the same period, yet the Board consistently failed to investigate, discipline, or otherwise act. The Board's custom and practice of failing to act created an environment in which teachers understood they could engage in sexual misconduct toward students openly and without consequence.

92. As a result of Kinziger's misconduct and the Board's deliberate indifference, Kayla suffered and continues to suffer damages including loss of equal educational opportunity, ongoing depression, anxiety, suicidal ideation, and other lasting harm into adulthood.

WHEREFORE, Plaintiff Kayla Kasper respectfully requests that this Court enter judgment in her favor against the Board, award compensatory damages in an amount to be determined at trial, enter injunctive relief, and grant such other relief as the Court deems just and proper.

### COUNT 6 — *MONELL* CLAIM, DEPRIVATION OF RIGHT TO BODILY INTEGRITY UNDER THE FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983
### (Plaintiffs Amanda, Brooke, Grace, Brianna, Kayla, and Brianne Carriveau as next friend of D.P., a minor, v. Defendant Board)

93. All Plaintiffs restate, reallege, and incorporate by reference all preceding paragraphs as if fully stated herein.

94. Students have a constitutional right to bodily integrity under the substantive due process protections of the Fourteenth Amendment. Sexual abuse by a state actor can constitute a violation of that right. *See, e.g., Doe v. Bd. of Educ. of City of Chicago*, 611 F.Supp.3d 516, 538 (N.D. Ill. 2020); *Sandra T.E. v. Sperlik*, 639 F.Supp.2d 912, 921 (N.D. Ill. 2009); *Medina v. Izquierdo*, 594 F.Supp.3d 1045, 1060 (N.D. Ill. 2022). A school district may be held liable under § 1983 for maintaining a policy or custom of deliberate indifference to known or suspected abuse that fostered a climate of abuse. *Doe v. Bd. of Educ. of Hononegah Community High Sch. Dist. No. 207*, 833 F. Supp. 1366, 1379 (N.D. Ill. 1993).

95. Each Plaintiff was deprived of her right to bodily integrity: Amanda by Heisel's grooming and sexual assault (2010-2013); Brooke by Larsen's repeated grooming and sexual assaults (2013-2014); Grace by Larsen's grooming and sexual assault in 2018; Brianna by Jason Terry's sexual misconduct (2010-2012); Kayla by Kinziger's repeated unwanted physical caressing at her desk across two school years; and D.P. by Gander's repeated unwanted shoulder massages during the drama program. D.P.'s deprivation was the direct and foreseeable product of the Board's custom and practice: the Board's 2023 handling of the gym teacher complaints — including its public discrediting of D.P. and other students who came forward — directly caused D.P.'s silence when Gander subsequently subjected her to repeated unwanted physical contact. Had D.P. not been silenced by the Board's 2023 institutional response, she would have had both a path and the trust to report Gander's conduct before or as it escalated.

96. The sexual abuse of all Plaintiffs did not occur in isolation but within a pervasive culture of teacher-student sexual abuse at Oconto Falls School District spanning at least 1988 through 2025 — at least thirty-five years — involving at least twelve different teachers and staff members affecting at least twenty identified victims and reporters. School officials received reports about, observed, or had actual knowledge of this pattern of abuse, yet consistently failed to investigate, discipline, or take protective action.

97. The Board maintained a pervasive custom and practice of deliberate indifference to sexual misconduct, specifically including: Heisel's conduct with Amanda was known by multiple teachers and administrators over three years, yet the Board failed to investigate or intervene; Moynihan received complaints about Larsen and Brooke in 2013, responded only by having "a discussion with Brynn about boundaries," and allowed the abuse to continue; the Board failed to discipline, flag, or report Larsen following the 2014 police investigation, directly enabling Larsen to return and abuse Grace in 2018; Marc Kinziger's daily, open sexual misconduct was visible to any school official who entered or passed

30

his classroom over two consecutive school years, yet no school official intervened or reported it; Gander engaged in sexual misconduct with students beginning at least as early as 2005 and continued for at least twenty years without the Board taking meaningful action; at least four female teachers presented the Board directly with documented evidence of Cromell's misconduct in June 2015 closed session, and the Board responded by promoting him to Associate Principal — an affirmative institutional choice, not passive neglect; in 2023, the Board dismissed pre-public reports from multiple parents, issued a statement falsely denying those prior reports had been ignored, publicly characterized reporting students as threats to the teacher's wellbeing, and warned the community against future reports, directly silencing D.P.; and when D.P. disclosed her own victimization by Gander to Officer Kuhn following his arrest in December 2025, law enforcement failed to designate D.P. as a victim and conducted no follow-up with her or her mother.

98. The Board maintained specific unwritten policies, practices, and customs that caused Plaintiffs' injuries, including: (1) failure to investigate reports of teacher-student sexual misconduct; (2) systematic failure to file mandatory reports under Wis. Stat. § 48.981; (3) failure to flag, discipline, or report accused teachers to licensing authorities or other districts; (4) retaliation against those who report; (5) affirmative promotion of accused perpetrators; (6) tolerance of open, observable teacher misconduct without intervention; (7) permitting staff to socialize with and provide alcohol to students; (8) failure to create a safe reporting environment for students; (9) dismissal of student-on-student sexual assault reports; (10) failure to ensure mandatory reporting compliance for at-home student abuse; (11) public discrediting of student reporters and warning against future reports; and (12) failure to designate child victims following disclosure. To put it succinctly, the widespread pattern-and-practice being pleaded here is this one:

**This Defendant has maintained a pervasive unwritten policy, practice, and custom of deliberate indifference to sexual misconduct in all its forms — whether perpetrated by teachers against students, by students against other students, or by staff against staff — that deprived Plaintiffs**

31

of their constitutional rights to bodily integrity and personal security under the Fourteenth Amendment, under which reports were dismissed rather than investigated, perpetrators were protected rather than disciplined, and those who came forward were silenced, discredited, penalized, or threatened rather than supported.

99. The Board's custom and practice was the moving force behind all six Plaintiffs' constitutional injuries: Moynihan's inadequate response to complaints about Larsen and Brooke in 2013 allowed the abuse to continue; the Board's failure to act on prior reports of Larsen's abuse directly enabled Larsen to return and abuse Grace in 2018; the Board's knowledge of Heisel's conduct over three years and its failure to investigate or intervene enabled and emboldened his abuse of Amanda; the Board's failure to investigate Kinziger's open and daily misconduct directly enabled him to continue subjecting Kayla to sexual misconduct across two full school years; and the Board's 2023 handling of the gym teacher complaints directly caused D.P. to remain silent about Gander's conduct, prevented her from reporting ongoing abuse, and resulted in her not being designated as a victim when she ultimately disclosed.

100. The Board failed to adopt and enforce adequate policies, including policies requiring formal investigations of reports of teacher-student sexual misconduct; mandating reporting of accused teachers to licensing authorities and other school districts; prohibiting accused abusers from returning to positions with student access; training staff on recognizing and reporting grooming behavior; establishing consequences for staff who fail to report suspected abuse; and creating a safe reporting system for students.

101. All six Plaintiffs suffered substantial damages including loss of equal educational opportunities, emotional distress, and other compensatory damages.

102. None of the Plaintiffs knew about the Board's institutional misconduct until 2025 and 2026, when they first learned about the practices and customs set forth above.

WHEREFORE, Amanda, Brooke, Grace, Brianna, Kayla, and Brianne Carriveau as next friend of D.P. respectfully request that this Court enter judgment in their favor against the Board, award

32

compensatory damages in amounts to be determined at trial, enter injunctive relief requiring the Board

to institute adequate policies and procedures to prevent teacher-student grooming and sexual abuse, and

grant such other relief as the Court deems just and proper.

## JURY DEMANDED AS TO ALL COUNTS

Respectfully submitted,

AMANDA WATZKA
BROOKE LA COUNT
GRACE WILLIAMS
BRIANNA KAIN
KAYLA KASPER
D.P., a minor, by her Next Friend, BRIANNE CARRIVEAU

s/ Cass T. Casper
Cass T. Casper, Esq.
WIED Bar Number 6303022
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
E: cass.casper@dispartilaw.com

Nick Bowman
Attorney Bar Number: 6348894
Attorney for Plaintiffs
Disparti Law Group, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
Telephone: (312) 971-1234 ext. 525
E-mail: Nick.Bowman@dispartilaw.com

33